# Ex parte Weaver.

## Application for Bail on Habeas Corpus.

1. *Bail in capital cases ; how appellate court revises refusal.*—In capital cases, the accused is not entitled to bail as a matter of right, where the proof is evi-

[Ex parte Weaver.]

dent, or the presumption great; and if bail is refused by the primary court or magistrate, on *habeas corpus*, this court will not reverse the decision (Rev. Code, § 4242), where its correctness depends greatly on the manner, conduct, and demeanor of the witnesses, unless it clearly appears to be wrong.

THE defendant in this case, Monroe L. Weaver, was indicted in the Circuit Court of Cherokee, in September, 1876, for the murder of James Weaver; and sued out a *habeas corpus* before the Hon. JAMES H. LEATH, the probate judge of said county, to obtain his discharge on bail. On the hearing before the probate judge, it was proved that the deceased was shot and killed while plowing in his field, and the man who was in the field with him testified that, on looking towards the place where the smoke of the gun was rising, he saw the defendant running away, with a gun in his hand. There was, also, proof of a former difficulty between the deceased and the prisoner, and of threats made by the prisoner against the deceased a short time before the killing. The witnesses introduced by the prisoner testified positively to facts proving an *alibi*. On all the evidence adduced, the probate judge refused to grant bail, and remanded the prisoner to jail; to which ruling a bill of exceptions was reserved by the prisoner. All the evidence adduced before the probate judge being set out in the bill of exceptions, the prisoner here files a certified copy of it, and renews his application for bail to this court, as authorized by the statute (Rev. Code, § 4242).

Neither the record nor the docket shows who appeared as counsel for the petitioner in this court; and there is no brief on file.

JOHN W. A. SANFORD, Attorney-General, for the State.

STONE, J.—The credibility of oral testimony depends in a large degree on the manner of the witness on the stand. Hence, in criminal prosecutions, it is the constitutional right of the accused "to be confronted by witnesses against him." The defendant, by the finding of a grand jury, stood charged with the crime of murder. The testimony before the judge of probate was, in form, positive. If true, deceased came to his death by a most atrocious murder, of which defendant was the perpetrator. Standing by itself, it makes a case of "evident proof," within the letter of the constitution, and which denies to defendant the privilege of bail.—See Constitution, declaration of rights, section 17. There was testimony, which, if believed, tended strongly to show that defendant could not have committed the homicide. This

[Murphy v. The State.]

conflict of testimony rendered it necessary for the judge of probate to weigh the evidence. The witnesses testified before him. He had the means of observing the degree of intelligence, and the matter of careful regard for truth, shown by each witness, which are the sure foundations on which confidence rests. Aye, more; he could, and doubtless did, scrutinize the deportment of the witnesses—the facial expression, not susceptible of description by either tongue or pen, which, with many other ingredients, constitutes what we call manner. He refused bail; and there is not enough in the record to justify us in reversing his decision.—See *Ex parte McAnally*, 53 Ala. 495.

We do not wish, however, to prejudge the case, to the defendant's injury. When the testimony goes before a jury, that body will be aided and enlightened, as the judge of probate was, by the presence and personal examination of the witnesses. They will not be trammelled by the finding of the judge of probate, nor by the refusal of this court to reverse his decision. They try the facts anew, and should give due weight to all the facts and circumstances in the case. If, upon all the testimony, there be left a reasonable doubt of the defendant's guilt, he should have the benefit of it. All we intend to say is, that, in entire ignorance of the manner of the witnesses, and with no means of informing ourselves on this point, we refuse to reverse the finding of the judge of probate, and refuse to award a writ of *habeas corpus*.